UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 1:17-CV-21704

ROGER WILSON,

Plaintiff,

v.

ROYAL CARIBBEAN CRUISES, LTD.,

Defendant,
_________________________________/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff sues Defendant and alleges:

## I. PRELIMINARY ALLEGATIONS

1. Plaintiff, ROGER WILSON ("Plaintiff"), is *sui juris* and is a citizen of Washington D.C.
2. Defendant, ROYAL CARIBBEAN CRUISES, LTD. ("RCCL"), is a corporation incorporated under the laws of Liberia having its principal place of business in Miami, Florida.
3. The matter in controversy exceeds, exclusive of interests and costs, the sum specified by 28 U.S.C. § 1332. In the alternative, if diversity jurisdiction does not apply, then this matter falls under the admiralty and maritime jurisdiction of this Court.
4. Defendant RCCL, at all times material hereto, personally or through an agent;
    a. Operated, conducted, engaged in or carried on a business venture in this state and/or county or had an office or agency in this state and/or county;
    b. Was engaged in substantial activity within this state;
    c. Operated vessels in the waters of this state;
    d. Committed one or more of the acts stated in Florida Statutes, §§ 48.081, 48.181 or 48.193;

e. The acts of Defendant set out in this Complaint occurred in whole or in part in this county and/or state.

f. The Defendant was engaged in the business of providing to the public and to the Plaintiffs in particular, for compensation, vacation cruises aboard the vessel, *Harmony of the Seas*.

5. At all times material hereto, Defendant RCCL is subject to the jurisdiction of the Courts of this state.

6. At all times material hereto, the causes of action asserted in this Complaint arise under the General Maritime Law of the United States.

7. At all times material hereto, Defendant RCCL owned, operated, managed, maintained and/or controlled the vessel *Harmony of the Seas*.

8. On or about March 10, 2017, Plaintiff was a paying passenger on Defendant's vessel *Harmony of the Seas*, which was in navigable waters.

9. On or about March 10, 2017, Plaintiff participated in an attraction onboard the *Harmony of the Seas* called the FlowRider Surfing Simulator (hereinafter "FlowRider").

10. The FlowRider is an attraction that shoots a three-inch sheet of water up a sloped surface at a high velocity to simulate the surface of a wave. Users then attempt to ride this sheet of water on a board either laying down or standing up.

11. Upon information and belief, on the date of the subject incident, the subject FlowRider was malfunctioning and propelling water at a higher velocity than normal, therefore unreasonably putting its passenger participants at a higher risk of injury.

12. The FlowRider onboard the *Harmony of the Seas* is different from a standard FlowRider, because employees and/or agents of RCCL modified it by shortening its overall length in order to fit the attraction on the deck of the cruise ship.

13. Due to this shorter length, a person propelled up the surface of the "wave" can be thrown into the back wall at a very high velocity, since unlike a standard flow rider, the back wall of the attraction is much closer to the "wave" front. This makes an already inherently dangerous attraction even more dangerous, such that it becomes unreasonably dangerous. This is not an obvious danger of which a passenger should be aware.

14. The FlowRider onboard the *Harmony of the Seas* is different from the current FlowRiders being manufactured. FlowRiders now utilize "Pillow Padding" in the recovery zones of FlowRiders in order to help support falls and decrease injuries. RCCL does not utilize the up-to-date technology, therefore unreasonably putting its passenger participants at a higher risk of injury.

15. RCCL does not conform to the policies utilized and recommended by the FlowRider manufacturer. Pursuant to the FlowRider manufacturer, prior to a patron being permitted to stand up ride on the FlowRider, the patron must have once ridden the FlowRider in the prone position. RCCL does not require its cruise passengers to ride in the prone position prior to attempting to stand up ride on the FlowRider. This makes an already inherently dangerous attraction even more dangerous, such that it becomes unreasonably dangerous. Requiring a patron to ride in the prone position prior to stand-up riding is a policy that allows the patron to acclimate themselves to the thin sheet of water being shot out at a high velocity.

16. According to the FlowRider manufacturer, "Riding a FlowRider takes skill, balance and most importantly, practice…That learning curve takes time and dedication." RCCL allows its

passengers, without any prior practice, acclimation through prone riding or evaluation of the potential participant's athletic ability (i.e., balance and skill), to attempt to stand on a board, without any assistance, while a thin sheet of water is shot out at them at an extremely high velocity. This results in passengers suffering devastating falls and sustaining serious injuries. Passenger injuries due to participating in the FlowRider aboard RCCL's vessels are occurring and have been occurring at a high rate, yet RCCL does not alter its policies, nor adequately inform its passengers of the high rate of injuries.

17. In a 2008 meeting between Wave Loch (the original FlowRider manufacturer) and RCCL, Wave Lock recommended that RCCL display a warning sign showing a skull and cross bones as an indicator of the serious risk of injury or even death associated with the FlowRider. RCCL ignored Wave Loch's recommendations.

18. Additionally, RCCL does not include adequate warnings on its website advertising the FlowRider regarding the potential to being seriously injured and/or killed. Moreover, RCCL does not place adequate signs at the FlowRider, warning potential passenger participants of the potential to being seriously injured and/or killed while participating in the FlowRider.

19. In the 2011 decision of *Johnson v. Royal Caribbean Cruises*, Ltd. 449 F. App'x 846, (11th Cir. 2011), the Eleventh Circuit Court of Appeals ruled that shipboard personal injury waivers are void and unenforceable pursuant to 46 U.S.C. § 30509. In Johnson, RCCL required the plaintiff to sign an electronic personal injury waiver prior to participating in a shipboard FlowRider. Despite knowing, since 2011, that the subject personal injury waivers are void and unenforceable, RCCL still requires its passenger participants to sign the same subject personal injury waiver. This is a blatant attempt by RCCL to deter passengers who aren't familiar with maritime law from filing a lawsuit or contacting an attorney due to injuries sustained while

participating in a shipboard FlowRider. The average passenger participant believes that they have no claim due to the personal injury waiver presented by RCCL. RCCL should be enjoined from presenting a personal injury waiver to future potential FlowRider participants.

**COUNT I – NEGLIGENCE**

Plaintiff incorporates by reference and realleges as though originally alleged herein the allegations of paragraph one through nineteen and further alleges:

20. It was the duty of Defendant RCCL to exercise reasonable care under the circumstances.
21. On or about March 10, 2017, RCCL and/or its agents, servants, and/or employees breached its duty to provide Plaintiff with reasonable care under the circumstances.
22. On or about March 10, 2017, the Plaintiff was injured while participating in the shipboard FlowRider aboard the *Harmony of the Seas*.
23. Plaintiff was injured due to the fault and/or negligence of RCCL, and/or its agents, servants, and/or employees as follows:
    a. Installing an attraction on Defendant's vessel that was inherently and unreasonably dangerous for passengers to use; and/or
    b. Modifying the FlowRider, on Defendant's vessel in such a way that the already dangerous attraction was made even more dangerous; and/or
    c. Failing to recognize the inherent risks involved with putting passengers on a ride that shoots water at them at a high velocity and propels them towards a wall; and/or
    d. Failing to properly and safely instruct passengers participating in the attraction on its proper use; and/or
    e. Failing to warn passengers of the risks and dangers involved with participating in the attraction; and/or

f. Failing to properly and adequately supervise the passengers participating in the FlowRider attraction; and/or

g. Failing to properly and adequately assist the passengers participating in the FlowRider attraction; and/or

h. Failing to properly and adequately supervise the instructors managing the FlowRider attraction; and/or

i. Failing to take proper precautions for the safety of passengers when encouraging passengers to participate in the attraction; and/or

j. Failing to promulgate and/or enforce rules or procedures to ensure the safety of passengers using the attraction; and/or

k. Failing to promulgate and/or enforce rules or procedures to ensure that instructors are adequately supervising the attraction and instructing passengers in its use; and/or

l. Failing to engage proper and reasonable safeguards to prevent passengers from being injured while participating in the subject activity; and/or

m. Failing to properly and adequately train RCCL employees and/or agents acting as instructors in how to conduct the subject activity safely; and/or

n. Failing to design the FlowRider without any structural dangers or features that create an inherent risk of injury; and/or

o. Failing to prevent improper and dangerous use of FlowRider; and/or

p. Failing to provide safety equipment to passengers participating in the FlowRider attraction; and/or

q. Failing to station instructors in proper positions around the FlowRider to help participants in need of aid; and/or

r. Failing to warn passengers of the dangers of participating in the FlowRider attraction; and/or

s. Instructing the Plaintiff to use the FlowRider attraction in a dangerous manner; and/or

t. Failing to supervise its employees/agents instructing and assisting passengers participating in the subject activity; and/or

u. Failing to train its employees/ agents to properly assist and help injured passengers participating in the subject activity; and/or

v. Hiring employees/agents for supervising, instructing, and assisting passengers participating in the subject activity without performing a thorough background and qualifications check; and/or

w. Retaining employees/agents for supervising, instructing, and assisting passengers participating in the subject activity without proper training; and/or

x. Retaining employees/agents knowing they did not possess the skills necessary to properly and safely instruct passengers participating in the subject activity; and/or

y. Retaining employees/agents when it knew, or should have known, that the employees/agents were negligent, careless, and/or reckless, incapable, incompetent, and/or posed a danger to passengers participating in the subject surfing activity; and/or

z. Failing to adequately train its employees/agents whose duty it was to instruct, supervise, and assist passengers participating in the subject activity; and/or

aa. Failing to adequately train its employees/agents whose duty it was to warn passengers participating in the subject activity of the inherent and unreasonable dangers and risks associated with the subject activity; and/or

bb. Failing to provide adequate supervision of employees/agents who instructed, supervised, and assisted passengers participating in the subject activity when it knew, or should have known, that improper, negligent, careless, incompetent, incapable, improper, and/or reckless instruction would likely result in serious injury; and/or

cc. Failure to adequately convey to passenger participants the risk of serious injury or death; and/or

dd. Failure to require passenger participants to ride in the prone position prior to attempting to ride in the standup position, as recommended by the FlowRider manufacturer; and/or

ee. Failure to assess a potential participant's skill, balance and experience prior to allowing the passenger to participate in the FlowRider; and/or

ff. Failing to adequately inspect and/or maintain the subject FlowRider, so as to ensure that the FlowRider was reasonably safe for passengers to use; and/or

gg. Failing to warn passengers and the Plaintiff in particular of the increased water propulsion at the time of the subject incident; and/or

hh. Failing to warn passengers and the Plaintiff in particular that the subject FlowRider was malfunctioning at the time of the subject incident; and/or

ii. Failing to promulgate and/or enforce adequate policies and/or procedures regarding the inspection and/or maintenance of the subject FlowRider; and/or

jj. All other acts or omissions constituting a breach of the duty to use reasonable care revealed through discovery.

24. As a result of the negligence of Defendant RCCL, the Plaintiff was injured about his body and extremities, suffered physical pain and suffering, mental anguish, loss of enjoyment of life, disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of his injuries, suffered physical handicap, lost wages and lost wage earning capacity as his working ability has been impaired. The injuries are permanent or continuing in nature and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of his vacation, cruise, and transportation costs.

**WHEREFORE**, Plaintiff demands all damages allowable by law and trial by Jury.

**COUNT II – STRICT PRODUCTS LIABILITY FOR THE NEGLIGENT DESIGN, INSTALLATION, AND UTILIZATION OF THE FLOWRIDER**

Plaintiff incorporates by reference and realleges as though originally alleged herein the allegations of paragraph one through nineteen and further alleges:

25. At all times material hereto, Defendant RCCL owed a duty to its passengers, and in particular to Plaintiff, to maintain and operate its vessel, *Harmony of the Seas*, in a reasonable manner under the circumstances.

26. At all times material hereto, Defendant RCCL was a manufacturer, designer, distributor, and/or was otherwise within the chain of distribution of the FlowRider product, having put the FlowRider on which the Plaintiff was injured into the channels of trade.

27. At all times material hereto, Defendant RCCL manufactured, designed, installed, and/or utilized the FlowRider on the *Harmony of the Seas*, and as such owed a duty to its passengers, and in particular to the plaintiff, to design the FlowRider without any defects.

28. At all times material hereto, Defendant RCCL, through its agents and/or employees who were acting in the course and scope of their employment and/or agency with the Defendant,

designed, installed, and utilized the FlowRider with two back steps at the top of each side of the sloped platform against which passengers would be propelled after a fall. These steps are much closer to the top of the wave than they are on a standard FlowRider, which is/was an unreasonably and inherently dangerous design and a foreseeable risk of serious injury, thus it breach its duty of care to the Plaintiff.

29. At all times material hereto, Defendant RCCL, knew or had reason to know that the FlowRider was unreasonably dangerous. RCCL knew or had reason to know that the FlowRider was unreasonably and inherently dangerous because prior incidents like the one described herein have occurred on their vessels.

30. Since passengers would not be aware of the dangers involved, RCCL had a duty to warn passengers participating in the FlowRider attraction that the attraction was likely to be dangerous.

31. The design flaw and lack of warnings which made the FlowRider onboard the *Harmony of the Seas* inherently and unreasonably dangerous was the direct and proximate cause of Plaintiff's injuries.

32. As a result of the foregoing, the Plaintiff was injured about his body and extremities, suffered physical pain and suffering, mental anguish, loss of enjoyment of life, disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of his injuries, suffered physical handicap, lost wages and lost wage earning capacity as his working ability has been impaired. The injuries are permanent or continuing in nature and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of his vacation, cruise, and transportation costs.

**WHEREFORE,** the Plaintiff demands all damages allowable by law and trial by jury.

**DATED May 5, 2017**

ARONFELD TRIAL LAWYERS
Attorneys for Plaintiff
3132 Ponce de Leon Boulevard
Coral Gables, Florida 33134
P: (305) 441.0440
F: (305) 441.0198

By: */s/ Spencer Aronfeld*
**Spencer Aronfeld, Esq.**
Florida Bar No.: 905161
Aronfeld@aronfeld.co
**Peter J. Ridge, Esq.**
Florida Bar No.: 114263
pridge@aronfeld.com
**Matthias M. Hayashi, Esq.**
Florida Bar No.: 0115973
mhayashi@aronfeld.com
**Lovecia A. Holmes, Esq.**
Florida Bar No.: 124132
lholmes@aronfeld.com